*630 OPINION OF THE COURT
Memorandum.
The judgment of the Appellate Division should be modified, with costs to appellants-respondents, by reinstating so much of respondents’ determination as disallowed the deduction of the consolidated mortgage of $9,954,474.91 from the net consideration subject to the real property transfer tax and, as so modified, affirmed.
This appeal arises out of respondents’ assessment of a deficiency in the amount of real property transfer tax petitioner owes as a result of its sale of an apartment building located at 10 West 66th Street in New York City. In August of 1979, petitioner obtained a loan and executed a mortgage in favor of Chemical Bank to finance its purchase of the building. The loan agreement contained provisions expressly recognizing petitioner’s intention to convert the building to cooperatively owned residences and then resell it to a cooperative corporation. Under the agreement’s terms, petitioner was required to submit a proposed offering plan to the Attorney-General within nine months, the mortgagee had the right to grant or withhold consent to the final conversion plan, and, upon the conversion, the mortgage executed by petitioner was to become "the [permanent [mjortgage encumbering the premises.” The mortgage and accompanying note were subsequently severed, with a portion representing approximately half of the outstanding balance assigned to Connecticut General Life Insurance Co. (CGLIC).
In May of 1980, petitioner entered into a contract to sell the building to a cooperative corporation (the grantee), which would then become the permanent owner and assume the CGLIC mortgage. Thereafter, the amount borrowed under the CGLIC mortgage was increased, and an amendment to the offering plan was filed reflecting the change in the obligation that the grantee was expected to assume. At the closing on May 1, 1981, just before the deed was to be transferred from petitioner to the cooperative corporation, a complex series of financing transactions ensued, resulting in a consolidation and further splitting of the mortgages held by Chemical and CGLIC, a subordination of the former to the latter, and extensive alterations in the mortgages’ terms and payment obligations. The mortgage held by Chemical was assigned to the grantee under an agreement specifically providing that there would be no merger with the fee interest. Finally, *631 following delivery of the deed, the grantee assumed the severed CGLIC mortgage.
When petitioner computed the amount due New York City under the real property transfer tax (Administrative Code of City of New York, ch 46, tit II), it deducted from the total consideration paid the amounts outstanding under the Chemical ($6.5 million) and CGLIC ($9,954,474.91) mortgages that had been assigned or assumed by the grantee. In deducting these amounts, petitioner relied on Administrative Code § II46-1.0 (5) (now § 11-2101 [5]), which defines the "net consideration” subject to the tax as "[a]ny consideration, exclusive of any mortgage or other lien or encumbrance on the real property * * * which existed before the delivery of the deed and remains thereon after the delivery of the deed” (emphasis supplied). Respondents, however, disallowed the deductions. Relying on a regulation which provides that "[n]o deduction shall be made on account of any lien or encumbrance placed on the property in connection with the sale” (Real Property Transfer Tax Regs art 5 [emphasis supplied]), respondents found that both mortgages "represented permanent mortgage financing which was contemplated as early as August 1979” and were therefore "placed on the property in connection with the anticipated cooperative conversion.”
Petitioner commenced the present article 78 proceeding to challenge respondents’ determination. Upon transfer from the Supreme Court (see, CPLR 7804 [g]), the Appellate Division concluded that there was not substantial evidence to support respondents’ finding that the Chemical and the CGLIC mortgages had been placed on the property "in connection with the sale” to the grantee. Construing the phrase "in connection with the sale” to require, "[a]t the very least,” that "the placement of the encumbrance * * * be imminent in time to that sale”, the Appellate Division held that the regulatory exclusion was inapplicable here and that the deduction for preexisting encumbrances was therefore available, at least for the severed CGLIC mortgage assumed by the grantee (136 AD2d, at 312-313).*
*632 We disagree. There is nothing in the plain language of the regulation to suggest a standard based upon temporal proximity. Thus, respondents’ interpretation of the regulation, which permits its application without regard to the amount of time elapsed between the placement of the lien and the taxable sale, was clearly not irrational (see, Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459).
Further, respondents’ application of the regulation to the facts in petitioner’s case was supported by substantial evidence. The explicit terms of the mortgages, as well as the manner in which they were modified after the contract of sale was executed, demonstrates that, from the outset, they were intended to be an integral part of the financing for the cooperative conversion and the building’s ultimate sale to the cooperative corporation. That a specific purchaser for the property had not yet been identified at the time the mortgages were first executed is irrelevant in these circumstances, since it is clear that a cooperative conversion involving a sale to some corporate entity was contemplated. Indeed, in contrast to cases involving ordinary assumable mortgages, which ordinarily merely provide a future buyer with the option to assume in the event of a resale, the mortgages in this case required petitioner to exert its best efforts to effect a resale and expressly provided for conversion to permanent financing upon completion of that resale.
Finally, contrary to petitioner’s contentions, the regulation disallowing deductions for encumbrances placed "in connection with the sale” of real property is not inconsistent with the governing statute. Rather, it is merely a reasonable measure to protect against circumvention of the transfer tax through simple manipulation of the sequence in which the mortgage and sale closings occur. Furthermore, while not dispositive, the fact that the regulation is virtually identical to regulatory provisions adopted under similar State and Federal transfer tax statutes (see, 20 NYCRR 575.3; 2 Fed Tax Regs [26 CFR] § 43.4361-1 [1970] [implementing 26 USC former § 4361 (repealed in 1976)]) supports the conclusion that respondents’ interpretation of the governing statute, as reflected in the challenged regulation, is rational (see, Kurcsics v Merchants Mut. Ins. Co., supra, at 459). *633 Chief Judge Wachtler and Judges Simons, Alexander, Titone, Hancock, Jr., and Bellacosa concur in memorandum; Judge Kaye taking no part.
Judgment modified, etc.

 The court, however, upheld respondents’ disallowance of a deduction for the $6.5 million mortgage that was assigned to the grantee. Agreeing with respondents’ alternative argument, the court concluded that, notwithstanding the nonmerger clause in the assignment agreement, the assignment of that mortgage to the grantee-fee owner, as a practical matter, had obliterated the mortgage obligations and, consequently, the mortgage no longer had significance for tax purposes. Petitioner disputes this conclusion on its *632 cross appeal. However, because we uphold respondents’ disallowance of both mortgage deductions under article 5 of the Real Property Transfer Tax Regulations, we need not consider its contentions.